IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **TED HILL,** | ) | **CASE NO. 8:05CV566** |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **KENEXA TECHNOLOGY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 34) filed by the Defendant, Kenexa Technology, Inc. ("Kenexa"). For the reasons stated below, the motion will be granted in part and denied in part.

## PROCEDURAL BACKGROUND

Kenexa is a Pennsylvania corporation, authorized to do business in Nebraska, and the Plaintiff, Ted Hill, is a resident of Nebraska. (Complaint, Filing No. 1, ¶¶ 1–2; Answer, Filing No. 16-3, ¶¶ 1–2). Hill is claiming damages in excess of $75,000. (Filing No. 38, Plaintiff's Initial Disclosures, ¶ C). Although the Complaint lacks any jurisdictional statement as required by Fed. R. Civ. P. 8(a)(1), it appears that this Court has diversity jurisdiction over the Plaintiff's claims under 28 U.S.C. § 1332.

Hill filed this suit against Kenexa, asserting causes of action for (1) fraudulent misrepresentation based on Kenexa's alleged misrepresentation of the conditions to Hill's employment, (2) fraudulent concealment based on Kenexa's alleged concealment of the conditions to Hill's employment, (3) negligent representation, based on Kenexa's allegedly negligent misrepresentation of the conditions to Hill's employment, and (4) promissory estoppel. (Complaint, Filing No 1; Filing No. 35, ¶ 26; Filing No. 37, ¶ 24). Kenexa has asserted a counter claim for tortious interference with a business relationship expectancy,

based on Hill's alleged intentional or reckless act of not obtaining the consent of Ameritas Acacia Companies ("Ameritas") before accepting a position with Kenexa, and his alleged intentional or reckless act of telling Ameritas that Kenexa failed to inform him that he needed the consent of Ameritas before accepting a position with Kenexa. (Filing No. 16-3, ¶¶ 24–29).

## FACTS

### *Uncontroverted Facts*

The parties have submitted briefs in support of and in opposition to the Motion for Summary Judgment, in compliance with NECivR 56.1. The following facts are those stated in the Defendant's brief (Filing No. 35), supported with pinpoint citations to the Defendant's index of evidence (Filing No. 36), and specifically acknowledged to be true in the Plaintiff's brief (Filing No. 37).

Kenexa provides human resource software and consulting services to other companies. On March 24, 2004, it entered into an agreement with Ameritas using Kenexa's standard Master Service Agreement. Kenexa had used a similar standard agreement for several years with most other clients including prior contracts with Ameritas. Within the Master Service Agreement was a provision requiring that if either Kenexa or Ameritas attempted to hire an employee of the other party, the other party must first consent to the particular employment. That provision was standard in all of Kenexa's contracts with clients. (Filing No. 35, ¶¶ 1–4; Filing No. 37, ¶¶ 1–2).

In January 2001, the Plaintiff, Ted Hill, began work for Kenexa as a consultant in the assessment department. While in this position, he worked with Kenexa's client, Ameritas. In November 2003, Hill resigned his position with Kenexa, and, in late 2003, accepted a

position as the Assistant Vice President for Organizational Development and Training with Ameritas.  While working for Ameritas, Hill reported to his supervisor, Janet Schmidt, Senior Vice President and Director of Human Resources.  Hill was aware that Kenexa provided Ameritas with employee survey and assessment services, and Hill often assisted the Kenexa consultant who worked on the Ameritas account.  (Filing No. 35, ¶¶ 6–10; Filing No. 37, ¶¶ 4–8).

When Hill attended a seminar sponsored by Kenexa at its office in the spring of 2005, Hill and Troy Kanter, President and board member of Kenexa, discussed the possibility of Hill returning to work for Kenexa as a consultant.  A few days later, Hill telephoned Kanter to inform him of Hill's interest in accepting a consulting position with Kenexa.  While negotiating the possible employment, Hill continued to work at Ameritas under the supervision of Schmidt.  (Filing No. 35, ¶¶ 12–14; Filing No. 37, ¶¶ 10–12).

In the fall of 2005, Hill again began discussions with Kenexa regarding possible employment.  On September 7, 2005, Kenexa offered Hill a position.  The written offer contained the following provision: "[e]mployment with Kenexa is on an 'at will' basis. Employment with Kenexa is not guaranteed for a fixed or definite period of time and may be terminated by the employee or the company at any time with or without cause or without prior notice."  Hill accepted the offer without indicating to Kenexa that Ameritas did not consent to the employment switch.  (Filing No. 35, ¶¶ 18, 19, 21, 22; Filing No. 37, ¶¶ 16, 17, 19, 20).

Hill notified Ameritas of his resignation through an e-mail to Schmidt.  Prior to the start of Hill's employment with Kenexa, and upon learning that Ameritas never agreed to

the switch in employment as Hill had indicated, Kenexa would no longer employ Hill. (Filing No. 35, ¶¶ 23, 25; Filing No. 37, ¶¶ 21, 23).

***Controverted Facts***

Hill contends that he was unaware of the Master Service Agreement contract provision between Kenexa and Ameritas prohibiting Kenexa and Ameritas from hiring each other's employees without the employing party's consent. He also claims that the written offer of employment dated September 7, 2005, contained all terms related to Kenexa's offer of employment; that nothing in that document required him to obtain the consent of Ameritas before accepting employment from Kenexa; and that no one from Kenexa placed an oral condition on this employment with Kenexa, requiring him to obtain the consent of Ameritas. (Deposition of Ted Hill, Filing No. 36-4, 18:25 to 19:24; 49:13 to 50:20; 61:17–20). Kenexa contends that Hill was aware of the provision in the Master Service Agreement, and that a Kenexa representative told Hill that he would have to have the consent of Ameritas in order to accept the offer of employment with Kenexa. (Deposition of Troy Kanter, Filing No. 36-2, 32:9–20; 33:6–12; 49:24 to 50:12; 54:8 to 56:5).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis

for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

Nebraska is the forum state and the state in which the events giving rise to the cause of action occurred; accordingly, this Court will apply the substantive law of the State

of Nebraska. *See, e.g.*, *Zutz v. Case Corp.*, 422 F.3d 764, 769 (8th Cir. 2005) (applying law of forum state in diversity action based on tort) (citing *Jordan v. NUCOR Corp.*, 295 F.3d 828, 834 (8th Cir. 2002)).

First, Kenexa argues that it is entitled to summary judgment on Hill's claims of fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. Kenexa has set forth the elements of each cause of action under Nebraska law,[1] and notes that an essential element of each claim is a false representation or the concealment of a material fact. Kenexa asserts that the uncontroverted facts demonstrate that Kenexa did not make a false representation to Hill, nor did Kenexa conceal from him any material fact.

---

[1] To establish a claim of fraudulent misrepresentation, a plaintiff must show that (1) a representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) it was made with the intention that it be relied upon; (5) the plaintiff reasonably did so rely; and (6) the plaintiff suffered damages as a result. *Precision Enters., Inc. v. Duffack Enters., Inc.*, 710 N.W.2d 348, 355 (Neb. App. 2006) (citing *Cao v. Nguyen*, 607 N.W.2d 528 (Neb. 2000)).

To prove fraudulent concealment, a plaintiff must show that (1) the defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact, concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact as the plaintiff believed it to be as the result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by such action or inaction in response to the concealment. *Streeks, Inc. v. Diamond Hill Farms, Inc.*, 605 N.W.2d 110, 118 (Neb. 2000).

To prove negligent misrepresentation, a plaintiff must show, *inter alia*, that in the course of the defendant's business, profession, employment, or any other transaction in which the defendant had a pecuniary interest, the defendant supplied false information for the guidance of the plaintiff in the business transaction, because the defendant failed to exercise reasonable care or competence in obtaining or communicating the information, and the plaintiff justifiably relied on the information. *Kramer v. Eagle Eye Home Inspections, Inc.*, 716 N.W.2d 749, 760 (Neb. App. 2006) (citing *Agri Affiliates, Inc. v. Bones*, 660 N.W.2d 168, 175 (Neb. 2003)).

The Nebraska Supreme Court has stated that "the difference between fraudulent misrepresentation and negligent misrepresentation is the duty required in each claim. In fraudulent misrepresentation, one becomes liable for breaching the general duty of good faith or honesty. However, in a claim of negligent misrepresentation, one may become liable even though acting honestly and in good faith if one fails to exercise the level of care required under the circumstances." *Agri Affiliates*, 660 N.W.2d at 175.

Hill has not met his burden of coming forward with any specific facts showing any genuine issue remaining for trial on these three claims and, accordingly, summary judgment will be granted in favor of Kenexa on Hill's first three causes of action.

With respect to Hill's fourth cause of action, based on promissory estoppel, Hill relies on the Nebraska Supreme Court case of *Goff-Hamel v. Obstetricians & Gynecologists, P.C.*, 588 N.W.2d 798 (Neb. 1999).[2]  In *Goff-Hamel,* the Nebraska Supreme Court emphasized that "[t]he development of the law of promissory estoppel 'is an attempt by the courts to keep remedies abreast of increased moral consciousness of honesty and fair representations in all business dealings.'" *Id.* at 801 (quoting *Rosnick v. Dinsmore*, 457 N.W.2d 793, 801 (Neb. 1990)).

The plaintiff in *Goff-Hamel* resigned a position she had held for eleven years in order to accept an offer of employment from the defendant.  Before she began work for the defendant, she was notified that the wife of a part-owner of the obstetrics practice opposed her hiring, and that she would not be employed.  Because the offer of employment was not for a specific term and was "at will," the district court granted summary judgment in favor of the defendant.  The Nebraska Supreme Court agreed that the plaintiff could not bring any claim for breach of an employment contract, but discussed, at length, a split in decisions from other jurisdictions regarding whether a plaintiff in such a circumstance can maintain a cause of action for promissory estoppel.

---

[2]*Goff-Hamel*, referred to in Hill's brief as "*Goth–Hammel*" is the only case on which he relies in opposition to Kenexa's motion for summary judgment.  Hill has cited no case law or other authorities in support of his claims of fraudulent misrepresentation, fraudulent concealment, or negligent misrepresentation.

The Nebraska Supreme Court, in a split decision, concluded that the plaintiff should be allowed to assert her cause of action against the defendant based on promissory estoppel. *Id.* at 804. The Nebraska Supreme Court further concluded that the plaintiff was entitled to summary judgment on the issue of liability, because (1) the defendant made a definite promise of employment to the plaintiff which the defendant reasonably expected or should have expected would induce her to terminate her present employment, (2) the plaintiff was, in fact, induced to terminate her present employment, (3) the plaintiff's action was detrimental to her, and (4) justice required that the defendant reimburse the plaintiff for damages incurred as a result of the promise of employment. *Id.* at 804–05. The Nebraska Supreme Court remanded the case to the district court for a determination of damages, if any, based on the plaintiff's wages from her prior employment and other damages incurred in reliance on the job offer, "as justice requires." *Id.* at 805.

Kenexa contends that this case should be distinguished from *Goff-Hamel,* because Kenexa's offer to employ Hill was conditioned on Hill obtaining the consent of Ameritas. Kenexa asserts that Hill's reliance on the job offer was not reasonable, foreseeable, or in good faith. Kenexa notes that the offer was terminated due to Hill's failure to obtain the consent of Ameritas, and because Hill misrepresented to Kenexa that he had in fact obtained that consent.[3] Kenexa characterizes these reasons for termination as "clearly lawful and appropriate."

---

[3]Hill has acknowledged that "[p]rior to the start of plaintiff's employment with Kenexa and upon learning that Ameritas never agreed to the switch in employment *as plaintiff had indicated*, Kenexa would no longer employ plaintiff." (Defendant's brief, Filing No. 35-1, ¶ 25 (emphasis added); Plaintiff's brief, Filing No. 37, ¶ 23).

The Nebraska Supreme Court's decision in *Goff-Hamel*, however, does not turn on the question of whether the defendant had good cause to withdraw its offer of employment. As in Hill's case, the employment offered to Goff-Hamel was "at will" and could be terminated for any lawful reason, good or bad. The Nebraska Supreme Court's opinion notes that the offer of employment to Goff-Hamel was terminated at the direction of the wife of one of the doctors in the obstetrics practice. *Id.* at 801, 805. Any inference that the termination of the offer of employment in *Goff-Hamel* was not lawful or appropriate simply because the objection was raised by a "wife" is an inference this Court will not draw. There may have been excellent reasons for the objection, or it may have been based on petty jealousy or spite. The Nebraska Supreme Court did not direct the district court to address that issue. Instead, the matter was remanded only for a determination of damages as "justice requires." A defendant's reason for terminating a definite, unconditional offer of employment, after a plaintiff has left other employment in reliance on the offer, should figure into the calculation of damages as "justice requires."[4]

There remain genuine issues of material fact regarding whether Hill knew that he needed to obtain the consent of Ameritas in order to accept the offer of employment by Kenexa. Accordingly, issues remain for trial, including whether Kenexa's written offer of employment was "definite" or "conditional," and whether Kenexa reasonably should have expected that Hill would terminate his employment with Ameritas, without obtaining the

---

[4] At one end of the spectrum would be the prospective employer who makes an offer of employment without the good-faith intention of fulfilling the offer. At the other end of the spectrum would be the employee who accepts an offer of employment, knowing that the employer is unaware of facts that, if revealed, would preclude the employee's employment. Damages as "justice requires" could be substantial in the first example, and non-existent in the second.

consent of Ameritas, to accept new employment with Kenexa. Depending upon how these issues are resolved, there may remain an issue of whether "justice requires" that Kenexa pay any damages to Hill, and, if so, the proper computation of any damages.

## CONCLUSION

Kenexa's motion for summary judgment will be granted with respect to Hill's claims based on fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. Because genuine issues of material fact remain regarding Hill's claim based on promissory estoppel, Kenexa's motion for summary judgment on that claim will be denied.

IT IS ORDERED:

1. The Defendant Kenexa Technology, Inc.'s Motion for Summary Judgment (Filing No. 34) is granted in part and denied in part as follows:

   a. Summary Judgment is granted in favor of the Defendant, Kenexa Technology, Inc., with respect to the Plaintiff's First, Second, and Third Causes of Action; and

   b. Summary Judgment is denied with respect to the Plaintiff's Fourth Cause of Action, based on promissory estoppel.

DATED this 14th day of February, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

10